390 So.2d 859 (1980)
STATE of Louisiana
v.
Thomas DUNCAN.
No. 66986.
Supreme Court of Louisiana.
November 10, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
James A. McPherson, New Orleans, for defendant-appellant.
BLANCHE, Justice.
Defendant, Thomas Duncan, was indicted by the State of Louisiana for an alleged violation of La.R.S. 14:118, the statute which proscribes actions constituting "public bribery." According to the bill of information filed in this matter, on the 21st day *860 of June, 1979, defendant "... being then and there a public employee, did commit public bribery by accepting and offering to accept, directly or indirectly, the sum of Twenty-Six Dollars and Fifty Cents ($26.50) in United States Currency from one KERMIT RICHARD, with the intent to influence his conduct in relation to his public employment and duty as a Driver's License Inspector of the Louisiana Department of Public Safety ...". A jury returned a verdict of guilty following defendant's trial on this charge. The trial judge sentenced defendant to pay a fine of $500 or to serve one year in Parish Prison, and to serve two years in Parish Prison, but suspended the prison sentence and placed Duncan on two years inactive probation. Defendant raises ten assignments of error in contesting his conviction. We find no merit in these assignments and affirm the jury verdict below.
On June 21, 1979, undercover police officer Kermit Richard went to the driver's license office where defendant was employed as a driver's license officer and posed as a French seaman attempting to secure a Louisiana driver's license. For purposes of this undercover investigation, he had obtained a "landing permit" or "seaman's pass", and had a note of introduction to the supervisor or manager at this particular office indicating that he could not speak English and requesting the supervisor to aid him in obtaining a driver's license. The first two driver's license officers Richard approached told him that the supervisor was out and that Richard would have to come back later or wait until he returned.
The following account of what occurred next is taken from the testimony of Officer Richard. Richard left the office to wait outside, observed the defendant walking out of the office and handed him the note of introduction and the landing permit. Defendant Thomas Duncan looked at these papers, indicated he would be going to lunch at that time, then pointed to his watch requesting that Richard return at 2:45 that afternoon. Richard testified that he showed defendant thirty dollars as he handed him the above papers.
When defendant returned to the office, he motioned for Richard to come to him and he filled out an application for the "seaman's" driver's license. The undercover officer posing as a seaman had placed his papers and the thirty dollars on defendant's desk, and as defendant filled out Richard's application, he took the money and placed it in his desk drawer. Officer Richard testified that he spoke only French during the entire time he spent at the driver's license office and pretended he could not speak or understand English. Without any formality other than asking Richard if he could drive a car and filling out Richard's application, defendant issued the undercover officer a temporary driver's license.
Defendant's version of the facts substantially differs from the above. Defendant testified that he was only trying to help the "seaman". According to defendant Duncan, he asked "seaman" Richard questions from the application form and received what he considered to be answers. He stated that he was under the impression that a seaman's pass or a landing permit was acceptable as identification for someone seeking a driver's license. Driver's license officer Cyril Miller testified that the seaman's pass, alone, was insufficient identification to secure a driver's license. District Supervisor Vincent Mancuso testified that it was insufficient identification.
Defendant maintained that he gave applicant Richard an eye test, showed him pictures of road signs from the examination book which he was able to distinguish, and gave him a driving test. Supervisor Mancuso stated that an eye test, an examination and a driving test are prerequisites to the issuance of a new license. Again, Officer Richard testified that he was asked only if he could drive a car before defendant Duncan filled out the application form and gave him the license. The police officer denied taking an eye test, an examination or a driving test.
The facts surrounding the exchange of funds for the license are very much in dispute. Defendant claims that Richard gave *861 him folded up money which he assumed, without counting, was $4.00. Duncan stated he then placed the money in his desk and gave the "applicant" fifty cents in change, since the license fee was $3.50. Richard testified that he showed defendant $30.00 prior to the license "application process", then gave Duncan a twenty dollar bill and a ten dollar bill as Duncan filled out Richard's application, and that Duncan placed this money in his desk drawer.

Assignment of Error Number 1
Defendant first alleges that the public bribery statute under which he was convicted (La.R.S. 14:118) is unconstitutional in that it is overbroad, vague and does not apprise men of common intelligence of what it prohibits. This precise constitutional attack was launched against the public bribery statute in State v. Smith, 252 La. 636, 212 So.2d 410 (La.1968). This Court correctly rejected that attack in Smith, and for the same reasons, reaffirms herein the constitutionality of La.R.S. 14:118. The legislature has amended the public bribery statute since Smith, but only to add or to clarify a class of persons to which the statute is applicable. The amendment is not relevant to the facts of this case and in no way affects the accuracy of this Court's prior conclusion in Smith.

Assignment of Error Number 2
Defendant contends that he was entrapped by the undercover officer whom he was convicted of bribing. Defendant did not, at any point, raise this defense of entrapment in the trial court, but addresses it for the first time in his brief on appeal. Issues and objections not raised at the trial level will not be considered on appeal unless an error is alleged that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La.C.Cr.P. arts. 841 and 920; State v. Madison, 345 So.2d 485 (La.1977). Even had the defense of entrapment been properly before the court, there is no evidence to support the allegation. The undercover officer merely furnished the opportunity for the commission of this crime. In fact, the record shows that the key to Duncan's defense was his denial that he ever received more than the proper license fee, and defendant himself argues that he may be guilty of malfeasance in office, but not of bribery, due to the procedure he followed in issuing the license.

Assignment of Error Number 3
Defendant alleges that the state must prove specific intent on his part to commit public bribery before he can be convicted of that crime, and maintains that this essential element was not proven. Jurisprudence establishes that where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequences, proof of specific intent is required. State v. Johnson, 368 So.2d 719 (La.1979). Included within the definition of public bribery is the language "with the intent to influence his conduct in relation to his position, employment or duty." The statute does require proof of an intent to produce the consequence of influencing conduct. Defendant is correct in his contention that the state must prove specific intent to influence his conduct in relation to his position, employment or duty to convict him of public bribery.
The record shows that the state did meet its burden of proof in this respect. Undercover police officer Kermit Richard testified that he offered defendant $30.00 in order to obtain a driver's license for which the standard fee is $3.50. According to Richard, defendant accepted the $30.00 and issued a driver's license to him without administering any written, oral or driving tests of his knowledge or skills. Intent, absent an admission of such by a defendant, must necessarily be proven by inferences from surrounding facts and circumstances. See La.R.S. 15:445. Inferences from the facts as developed at trial support a finding that defendant accepted something of value from Officer Richard with the intent to influence his conduct in relation to his position, employment or duty.
This assignment is without merit.

*862 Assignments of Error Numbers 4, 8 & 9

In these assignments defendant basically argues that there was insufficient evidence to convict him. In reviewing defendant's conviction, this Court examines the record to determine if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 389 So.2d 384 (decided simultaneously with this case). We conclude that there was sufficient evidence to prove the essential elements of this crime.
Defendant urged, in oral argument, that the testimony of undercover officer Richard as to his offer and defendant's acceptance of $30.00 is insufficient to prove an essential element of the offense since defendant himself testified that he received what he believed to be $4.00 from Richard and gave him $.50 in change. Defendant is, in effect, arguing that a defendant cannot be convicted based upon the testimony of a state witness if the defendant testifies to the contrary. This argument has no merit. It is the duty of the trier of fact to resolve conflicts in testimony. Obviously the jury in the instant case believed the testimony of the undercover police officer rather than that of the defendant as to the events surrounding the exchange of money and the issuance of the driver's license. Lack of corroboration of the officer's testimony does not mean that this testimony constitutes insufficient evidence to sustain a conviction, especially in instances where, as in this case, the actions allegedly constituting the crime took place in the presence of only the defendant and the undercover police officer.
Defendant further contends that the evidence is insufficient to convict him since the $30.00 at issue was not "marked" by the investigating officers and was never recovered. The fact that there exists an alternative method of crime detection which may have facilitated proof of the crime and which might have been employed does not make the evidence actually presented at trial insufficient to sustain a conviction. In reviewing a conviction we look to what is in evidence in the trial court rather than what could have been presented in court had law enforcement officials chosen another method of crime detection. Viewing all of the evidence in the light most favorable to the prosecution, a rational trier of fact could certainly have concluded that all of the elements of this crime were proven beyond a reasonable doubt.

Assignment of Error Number 5
Defendant argues that hearsay testimony was improperly admitted in evidence. The testimony referred to by defendant is the statement by Officer Richard, "I was asked to participate in an investigation by the Internal Affairs Unit ...". Defendant objected as this statement was being made. The court instructed the witness as to what was hearsay and warned him not to make hearsay statements. The witness then repeated the above statement and defendant did not object again or ask that the remark be stricken from the record. Even assuming that defendant made a contemporaneous objection to this testimony, we find no merit in this assignment of error.
The statement at issue is not necessarily hearsay since its effect may have been only to explain the officer's future actions in the investigation. Even if it was an assertion made to prove the truth of the matter stated, its admission in evidence does not mandate a reversal of defendant's conviction. Assuming that hearsay was incorrectly admitted over proper objection, under the circumstances of this particular case, this was not an error affecting the substantial rights of the accused or otherwise warranting a reversal of defendant's conviction under C.Cr.P. art. 921.

Assignments of Error Numbers 6 & 7
In these assignments of error, defendant complains of what he considers to be the improper admission of "other crimes" testimony in evidence. The testimony at issue was elicited from Officer Richard as he was questioned about his part in the investigation leading to the arrest of defendant. *863 Richard testified that he showed defendant thirty dollars and stated "... apparently thirty dollars was a figure that was used in others ...".
Defendant did not object to this testimony nor did he request that the court admonish the jury or declare a mistrial. In any event, the statement made by the defendant does not appear to be a reference to any particular crime and is not a reference to any crime involving the defendant.

Assignment of Error Number 10
Defendant alleges in his last assignment of error that the trial judge improperly commented on the evidence under the guise of jury instructions. The statement defendant points to occurred when the judge, in refusing to give a special jury instruction, stated, "The court declines to give Special Charge Number One, it being covered in the general charge (Element of Crime)." This statement is simply a denial of the special charge because the general charge encompassed the special charge. This is not in any way a comment on the evidence and is clearly distinguishable from cases cited by defendant in which the judge refused to give a special charge on the ground that the evidence did not support it.
For the above reasons, we affirm the conviction and sentence of Thomas Duncan on the charge of public bribery.
AFFIRMED.