410 So.2d 720 (1982)
STATE of Louisiana
v.
Alton A. "Buggs" BELGARD.
No. 81-KA-1117.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied March 19, 1982.
*722 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., R. Greg Fowler, Asst. Dist. Atty., for plaintiff-appellee.
Wellborn Jack, Jr. of Jack, Jack, Cary & Cary, Shreveport, for defendant-appellant.
DIXON, Chief Justice[*].
Defendant, Alton A. "Buggs" Belgard, appeals his conviction of attempted second degree murder. He was sentenced to twelve years at hard labor. Defendant's conviction and sentence are affirmed.
Alton Belgard visited the trailer of his legally separated wife, Judy Belgard, on August 30, 1980 in Alexandria, Louisiana. Stephen Saucier, the victim, and his two children were present, as well as the Belgards' daughter, Angie. Defendant entered the trailer with the Belgards' thirteen-year-old son, Robert, at 8:30 p. m. Saucier testified he introduced himself to defendant and extended his hand to shake hands when Belgard swung at his head with a pair of cowboy boots. Saucier blocked the boots and pushed defendant against the wall. He placed his hand on Belgard's back and told him, "Hey, let's talk about this." Saucier then heard a tremendous concussion and felt his knees go out from under him as four or five shots were fired.
Judy Belgard had been in the kitchen. She went to the corner of the room to see what was happening. Stephen Saucier was lying on the floor, and the defendant was standing. Defendant yelled for her to come to him, followed her into the kitchen and hit her head with the gun. He grabbed her arm and jerked her back into the room where Saucier was lying. The defendant then began yelling at Judy Belgard. He told her the incident was all her fault because of her relationship with Saucier. Stephen Saucier sustained multiple gunshot wounds, and Judy Belgard underwent surgery for three fractured skull bones. Alton Belgard turned himself in to the police early the next morning.
Assignments of Error Nos. 1 and 5
Defendant contends the trial court erred in denying pretrial disclosure of oral inculpatory statements made by him. The court's denial of defendant's motion for mistrial, based on the prosecutor's reference in opening statement to other crimes allegedly committed by the defendant, is also assigned as error. Defense counsel does not argue these assignments in brief, but incorporates the argument made at the motion for mistrial for our consideration of them.
In his opening statement the prosecutor remarked:
"The State will prove from other witnesses, Nancy Corso and Frank Corso, Charlotte Sills, Travis Worrellthese are the kinfolk and brothers and sisters of the victimI mean of Judy Sills Belgard, who came to the scene immediately upon receiving the telephone call `Help! come now, Bugs is here,' came to the scene and saw Bugs leaving from the house on August 30, 1980. Saw him walking out of the house with a sheepish grin or smile on his face. You'll hear the testimony of Nancy Corso that she reached and picked up a brick to try and stop him and he pointed a pistol to stop himto stop her from doing that."
Defense counsel objected to the prosecutor's statement that defendant had pointed a pistol at Nancy Corso. The objection was based on the state's reference to the unindicted crime of aggravated assault allegedly committed by the defendant without providing notice under State v. Prieur, 277 So.2d 126 (La.1973).
*723 The trial court correctly overruled this objection and denied the motion for mistrial. The general rule is that the prosecution may not introduce evidence of other criminal acts of the accused. An exception is made if the evidence is substantially relevant to some purpose other than to show the accused is a bad person, therefore more likely to have committed the crime. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Lee, 381 So.2d 792 (La.1980); State v. Monroe, 364 So.2d 570 (La.1978). The prohibition does not bar admission of criminal acts that form part of the res gestae. R.S. 15:447;[1] R.S. 15:448.[2]State v. Prieur, supra, does not require the state to provide notice to the defendant of crimes that fall within the res gestae exception.
Nancy Corso arrived at Judy Belgard's trailer shortly after the shooting incident. The defendant was present, and Saucier was lying on the floor. Corso's attempt to stop defendant from leaving resulted in Alton Belgard aiming a gun at her to avoid remaining at the residence. These facts clearly fall within the res gestae exception to the notice requirement of State v. Prieur, supra. The motion for mistrial under C.Cr.P. 770 was properly denied.
The record indicates defense counsel neither objected to nor mentioned the nondisclosure of oral inculpatory statements made by defendant during his argument on the motion for mistrial. The sole basis for the objection was the state's reference to the defendant having pointed a gun at Nancy Corso. This court has consistently held issues and objections not raised at trial will not be considered on appeal unless an error is alleged that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. C.Cr.P. 841 and 920. See State v. Duncan, 390 So.2d 859 (La.1980); State v. Madison, 345 So.2d 485 (La.1977). Thus, we do not consider defendant's assignment of error based on nondisclosure of oral inculpatory statements.
Assignments of Error Nos. 2 and 3
By these assignments defendant asserts the trial court erred in denying his motion for mistrial and motion for new trial based on the prosecutor's erroneous statements to the jury venire during voir dire examination. The defendant had entered a plea of not guilty and not guilty by reason of insanity. The prosecutor questioned prospective juror Hazel Roberts during voir dire:
"Mrs. Roberts, do you understand that by entering a plea of Not Guilty and Not Guilty by reasons of insanity, the defendant doesn't say he's innocent of the charge. He just says I want the State to come forward and prove my guilt?"
Defense counsel objected to the question. The trial court sustained the objection and admonished the jury to disregard the comment of the prosecutor. The court informed the jury the prosecutor's comment was not a correct statement of the law. Defense counsel then argued, outside the presence of the jury, that the prosecutor's statement tainted the entire jury venire, and he requested a mistrial. The trial court denied the motion for mistrial after extensive argument by the prosecutor and defense counsel. The judge informed the jury venire of the applicable law.[3] Defendant *724 contends the statement by the prosecutor was an expression of his personal belief that is prohibited by State v. Kaufman, 304 So.2d 300 (La.1974), cert. den. 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976).
State v. Kaufman, supra, held the prosecutor's expression of personal opinion of the defendant's guilt in his argument to the jury was impermissible and reversible error. The prosecutor's remarks in this case, however, were not an expression of his personal opinion about the defendant's guilt. The prosecutor made an improper and incorrect statement of the law that was corrected by the trial court's admonition to the jury.
The trial judge is given discretion to determine whether a fair trial is impossible, or an admonition is adequate to assure a fair trial when prejudicial conduct does not fit within the mandatory mistrial provisions of C.Cr.P. 770. See State v. McMahon, 391 So.2d 1120 (La.1980); State v. Domangue, 350 So.2d 599 (La.1977). The trial judge correctly determined the admonition was sufficient in this case. The harsh remedy of mistrial is not justified when an admonition will preserve the defendant's rights. State v. McMahon, supra; State v. Wesley, 347 So.2d 217 (La.1977).
The trial judge thoroughly informed the jury venire about the law applicable to this case. He clearly advised them the prosecutor's statement was incorrect. During his charge to the jury, the trial judge instructed the jurors that there was a presumption of innocence, and the state had a duty to prove guilt beyond a reasonable doubt. Under these circumstances, the prosecutor's remarks did not make it impossible for defendant to receive a fair trial, and the assignment lacks merit.
Immediately after the trial judge admonished the jury to disregard the above statement, the prosecutor asked the prospective juror the following question:
"Mrs. Roberts, do you also understand that the law presumes that a defendant intends the natural and probable consequences of his acts?"
Defense counsel objected to this question, and moved for a mistrial. The trial judge denied the motion for mistrial following argument by counsel. The jury was told to disregard the prosecutor's comment because it was an incorrect statement of the law. The judge further advised them to only follow the law as given by the court.
Defense counsel argues that the statement was prejudicial and unconstitutional in the light of Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and State v. Heads, 385 So.2d 230 (La.1980). He asserts the combination of the prosecutor's two erroneous remarks was too prejudicial to the defense of insanity to warrant merely an admonition by the trial judge.
*725 In Sandstrom v. Montana, supra, 442 U.S. at 513, 99 S.Ct. at 2454, 61 L.Ed.2d at 44, the United States Supreme Court found an instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts," suggestive of serious constitutional problems. The court reasoned the presumption could have the effect in a deliberate homicide prosecution of shifting the burden to defendant to show he lacked the requisite mental state for the crime. Such use of the presumption by the jury would alleviate the state's burden of proving every fact necessary to constitute the crime charged beyond a reasonable doubt.[4]
In State v. Gutter, 393 So.2d 700 (La. 1981), however, this court distinguished the Sandstrom decision. The presumption appeared in the prosecutor's argument to the jury instead of the trial court's charge. The trial court admonished the jury to disregard the remarks. Thus, there was little reason to believe that a reasonable juror would credit the prosecution's argument so as to shift the burden of persuasion to the accused.
The prosecutor's remark in this case was made during voir dire examination. The prospective jurors were admonished to disregard the remark immediately after defense counsel's objection. Moreover, the trial judge charged the jury extensively as to the presumption of innocence and the necessity that defendant's guilt be proved beyond a reasonable doubt. Under the circumstances it appears that the trial court's admonition was sufficient to protect the accused's right to a fair trial. This assignment lacks merit.
Assignment of Error No. 6
The trial court refused to give seven of defendant's five special charges to the jury. Error is assigned to the denial of the seven charges, but defendant only argues on appeal the refusal to give Instructions 12, 14 and 15.
C.Cr.P. 802 requires the judge to charge the jury as to the law applicable to the case. State v. Clement, 368 So.2d 1037 (La.1979); State v. Marse, 365 So.2d 1319 (La.1978). Special charges are governed by C.Cr.P. 807. It provides, in part: "A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent."
Defendant's requested charge 12 dealt with the aggressor doctrine.[5] He admits the trial judge's charge was a correct statement of the law,[6] but argues his special *726 instruction would have informed the jury of the "excessive force exception" to the aggressor doctrine. The trial judge's denial of the special charges, defendant asserts, undermined his defense of justification.
Testimony shows defendant committed the first act of aggression by swinging at the victim with a pair of cowboy boots. The victim held defendant against the wall in an effort to reason with him. No excessive force was used by Saucier to justify defendant's shooting of him. No evidence was adduced to show defendant believed he was in imminent danger of losing his life or receiving great bodily harm. Proposed Instruction 12 was not pertinent to the case because it was not supported by any evidence at trial. The court, therefore, was not required to give it under C.Cr.P. 807.
Defendant argues the trial judge erred for refusing to give special Instructions 14 and 15 to the jury. These charges dealt with negation of specific intent by evidence of a mental defect or disorder short of legal insanity.[7] The trial judge instructed the jurors on this issue as follows:
"Insanity at the time of the commission of a crime exempts the offender from criminal responsibility. If the circumstances indicate that because of a disease or defect the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant must be found Not Guilty by Reason of Insanity."
The trial court properly denied defendant's proposed instruction, and correctly charged the jury. Evidence of mental defect or disorder exempts a defendant from criminal responsibility only when it has been established the defendant was incapable of distinguishing between right and wrong with respect to the conduct in question. R.S. 14:14; State v. Murray, 375 So.2d 80 (La.1979); State v. Lecompte, 371 So.2d 239 (La.1979); State v. Andrews, 369 So.2d 1049 (La.1979); State v. Weber, 364 So.2d 952 (La.1978). The requested charge was incorrect under Louisiana law, and there is no merit in this assignment.
Assignment of Error No. 7
Defendant contends the trial court erred in accepting a nonunanimous jury verdict. The verdict was eleven to one in favor of conviction. In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) and Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court upheld the validity of nonunanimous jury verdicts for twelve person juries. This court has consistently held C.Cr.P. 782[8] does not violate the Sixth or Fourteenth Amendments to the United States Constitution. See State v. Green, 390 So.2d 1253 (La.1980); State v. Hodges, 349 So.2d 250 (La.1977), cert. den. 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 *727 (1978); State v. Morgan, 315 So.2d 632 (La. 1975). The assignment is without merit.
Assignment of Error No. 8
Defendant was sentenced to twelve years at hard labor. He submits the trial court erred in imposing an excessive sentence. The maximum sentence for a violation of R.S. 14:27 and 14:30.1 is imprisonment at hard labor for not more than fifty years.
Defendant's sentence falls within the lower range of sentences that he could have received. At the sentencing hearing the trial judge noted defendant had been convicted of a felony previously, and was involved in a burglary after that conviction. The present conviction is for a violent crime, and the defendant committed a battery on his wife in connection with this case. The record also indicates defendant had made numerous threats to Judy Belgard's life. Although the trial judge did not recite the C.Cr.P. 894.1 considerations into the record, it is clear he used those factors in determining defendant's sentence. In State v. Russell, 397 So.2d 1319 (La. 1981), this court held that a remand was not required, even though the trial judge had not complied with 894.1 in imposing sentence, when the sentence imposed was neither severe nor grossly out of proportion to the crime. See State v. Jones, 381 So.2d 416 (La.1980). The trial judge did not err by giving defendant a sentence of twelve years at hard labor.
Supplemental Assignment of Error
Defendant assigns as error the trial court's jury instruction on the definition of attempted second degree murder. However, defendant did not object to this instruction at trial, and it is not reviewable on appeal. See C.Cr.P. 841 and 920; State v. Duncan, supra; State v. Madison, supra.
For these reasons, defendant's conviction and sentence are affirmed.
BAGERT, J. ad hoc, dissents and assigns reasons.
BAGERT, Justice Ad Hoc, dissenting.
Alton A. "Bugs" Belgard was charged with the attempted second degree murder of one Steve Saucier. The facts of the case are as follows:
On August 30, 1980, Alton Belgard visited the trailer of his legally separated wife, Judy. He discovered a male visitor also present, the victim, Steve Saucier. Mr. Saucier rose when Belgard entered the trailer and introduced himself. Belgard pitched a pair of boots at Saucier, who dodged, and retaliated by pinning Belgard against the wall. Belgard's response to this was to shoot Saucier several times. After the incident, Mr. Belgard turned himself in to the police. He was duly charged with attempted second degree murder, tried on November 17th through 20th, 1980, and found guilty as charged. From such verdict defendant has perfected the present appeal. Eight assignments proper and one supplemental assignment were argued. As at least one of these assignments has merit sufficient to warrant reversal and remand for new trial, we find it unnecessary to consider any other assignments.

SUPPLEMENTAL ASSIGNMENT OF ERROR
In the supplemental assignment, defendant argues that the instructions regarding specific intent given to the jury by Judge Jackson were improper. Volume IV of the record, pgs. 752-753, indicate that the jury was instructed on the element of specific intent as follows:
Now, Second Degree Murderthe crimeis the killing of a human being...
(1) When the offender has a specific intent to kill or to create great bodily harm...
Now, the charge in this case is attempted second degree murder, so now let me define attempt. Attempt is defined as follows: Any person who, having the specific intent to commit a crime, does or omits an act for the purpose of, and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended, and it shall be immaterial whether, under the circumstances, he would actually have accomplished his purpose...
*728 It is clear that the law of Louisiana requires specific intent to kill; specific intent to cause serious bodily harm will not suffice. State v. Strother, 362 So.2d 508 (La. 1978); State v. Butler, 322 So.2d 189 (La. 1975). The specific intent required for an attempt is an intent to commit the completed crime. It is obvious from a reading of the instructions that the jury could easily have concluded that the defendant had a specific intent to cause great bodily harm, took some overt action in furtherance of it, and thusly arrived at the conclusion that he was guilty as charged.
This error involves only the inclusion of a few words, but those few words are seriously detrimental to the defendant's Due Process rights. "The Due Process Clause protects the accused against conviction, except on proof beyond a reasonable doubt, of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). The Code of Criminal Procedure is specific on the duty of the Court in these cases: "In all cases, the Court shall charge the jury that ... (a) person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt. C.Cr.P., Art. 804A(1). State v. Butler, supra, is perfectly on point here:
To suggest that no substantial error of law occurs, where the jury was in effect instructed that a person guilty of aggravated battery can be convicted of attempted murder, although he has no specific intent to kill by the battery, is to suggest an untrammelled discretion of prosecutor, jury, and court to punish an accused for offensive conduct. (State v. Butler, supra, at 193.)
Therefore, the only question remaining to this Court is whether the objections to the improper charge were perfected timely. This Court has consistently held that absent contemporaneous objection a defendant may not on appeal complain of the trial judge's charge to the jury. State v. Progue, 350 So.2d 1181 (La.1977). However, this Court in State v. Williamson, 389 So.2d 1328 (La.1980), provided an important exception to that rule:
... it is within the province of this reviewing Court to entertain complaint of Constitutional violations on appellate review, notwithstanding that consideration of such complaint more often than not is deferred until filing of a writ of habeas corpus. This Court's usual pretermission of such issues stems from the need of an evidentiary hearing which can only be had incident to the writ of habeas corpus. The record before us, however, bears full and sufficient proof of the error which no posterior hearing could augment. For this reason, the need for delay is obviated. (State v. Williamson, supra, at 1331.)
The rule, therefore, is that the error assigned must be of Constitutional level and that the record before the Supreme Court on the appeal must provide complete proof of the claim. Both criteria are met in this case.

ON APPLICATION FOR REHEARING
CALOGERO, Justice, concurring in the denial.
State v. Williamson, 389 So.2d 1328 (La. 1980) on which the defendant relies to support his application for rehearing is distinguishable from the case before us.
In Williamson, an error in jury instructions relative to the definition of the crime charged was found to be "of such importance and significance as to violate fundamental requirements of due process." Therefore, we entertained the defendant's complaint notwithstanding his failure to object at the time the instruction was given. The law regarding the definitions of first and second degree murder had been changed less than a month before the crime for which the defendant Williamson was charged. As a result, the prosecutor mistakenly referred to the former law and the judge mistakenly charged the jury under the former definitions of first and second degree murder. To further compound the mistake, the judge in Williamson read the jury a list of responsive verdicts which were applicable under the former definitions. Because of the glaring and obvious nature *729 of the errors made, because no further evidentiary hearing was needed to explore the extent of the error and its impact on the jury in the context of the trial as a whole, this Court entertained a constitutional attack on the conviction without requiring defendant to file a writ of habeas corpus. The absence of a contemporaneous objection was found not to bar upsetting the conviction because of constitutional deficiencies.
This case is distinguishable from Williamson. There was no recent legislative change in the legal definitions of the crime charged of which the trial judge and trial attorney were oblivious. Nor is it apparent from the record that the jury mistakenly applied the law, despite the fact that they may have been given an erroneous impression from the wording of the judge's charge. Application of this contemporaneous objection rule is designed for just such a case as this. Defendant cannot neglect to afford the trial judge an opportunity to correct the charge, take his chance on a jury acquittal, then complain after conviction of the error.
For these reasons I concur in denial of the rehearing.
NOTES
[*] Judges James C. Gulotta and Jim Garrison of the Fourth Circuit and Bernard J. Bagert, Sr. of the Orleans Parish Criminal District Court, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Marcus, and Blanche.
[1] "Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." R.S. 15:447.
[2] "To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." R.S. 15:448.
[3] The trial court admonished the jury with the following statements:

"BY THE COURT: Let the record reflect that the jury venire has returned to the courtroom.
Ladies and Gentlemen of the jury venire, all of you, those of you seated in the box, those of you out in the audience, please pay very strict attention to what I'm about to tell you.
You are to completely disregard the comment made by the prosecutor. Completely disregard it, it is incorrect.
Now, let me explain to you that every accused begins the trial of a case innocentpresumed innocent. It is up to the State to establish by its evidence to the jury's satisfaction, beyond a reasonable doubt that he is guilty. The defendant does not have to prove anything. It is up to the State to carry the burden of proof.
Now, there is but one exception to that and that is simply this. Where a defendant enters the dual plea of Not Guilty and Not Guilty by Reason of Insanity, as to the issue of insanity and that only, the defendant bears the burden of proving that at the time of the commission of the offense, because of mental disease or defect he did not know or could not distinguish between right and wrong.
Now, if you are selected as a juror in this case, this will be your burden: (1) You must look at the State's evidence to determine the question of guilt or innocence as I've explained it to you. (2) Should it be your opinion that the defendant is guilty, then you must look at the question of sanity or insanity at the time of the commission of the offense. Here, the burden of proof, as I've explained is on the defendant to establish that he was insane as I have defined it for you at the time of the commission, and here the burden of proof both is on the defendant and the degree of proof is not the same. The degree of proof is: by a preponderance of the evidence which means something is more likely so than not so.
Now, I want to reemphasize you are to disregard the statement made by the prosecutor. If you had to vote right now, you would have to say, Not Guilty, because the law presumes the defendant innocent and it is up to the State to establish his guilt by abeyond a reasonable doubt imposed upon the State. All right. Does everyone understand? You twelve in the box, do you understand?"
[4] This court considered an identical instruction in State v. Heads, supra. The United States Supreme Court granted certiorari in Heads v. Louisiana, 444 U.S. 1008, 100 S.Ct. 654, 62 L.Ed.2d 637 (1980), and remanded the case to be considered in light of Sandstrom v. Montana, supra. We remanded the case to the district court to determine whether the instruction constituted harmless error under Sandstrom.
[5] Instruction 12 reads:

"Notwithstanding that one is an original agressor (sic) he may nevertheless use force or violence in defense of his person if the person originally attacked uses excessive force against him or force beyond what it reasonable (sic) required under the circumstances."
[6] The trial judge gave the following charge in reference to the defense of justification and the aggressor doctrine:

"The use of force or violence upon the person of another is justifiable for the purpose of preventing a forcible offense against one's person if the force is reasonable and apparently necessary to prevent the offense.
Thus, if you find that the defendant committed the offense charged for the purpose of preventing a forcible offense against his person; and that the amount of force or violence used was reasonable; and that the force or violence used was apparently necessary to prevent the forcible offense; then you must find the defendant not guilty.
A defendant who raised the defense that he acted in self-defense does not have the burden of proof on that issue. The state has the burden of proving beyond a reasonable doubt that the offense was not committed in self-defense.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Thus, if you find that the defendant was the aggressor or that he brought on the difficulty, you must reject his claim of self-defense unless you find:
(1) that he withdrew from the conflict; and that his withdrawal was a good faith; and that he withdrew in a manner that put his adversary on notice that he wished to withdraw and discontinue the conflict."
[7] Proposed Instruction 14 provided the following:

"In deciding whether the defendant possessed the specific intent to kill or inflict great bodily harm upon Steve Saucier, if you are convinced that a preponderance of the evidence shows that the condition of the mind of the defendant at the time of the crime, together with the surrounding circumstances, was such that the defendant was not capable of forming this specific intent to kill or inflict great bodily harm, then you must find the defendant NOT GUILTY of the crime of attempted second degree murder. You should then proceed to consider whether the defendant may be guilty of a lesser included offense, such as attempted manslaughter."
Instruction 15 stated:
"If you should find that the defendant has established by a preponderance of the evidence:
(1) that, at the time of the occurrence of the conduct in question and with respect to that conduct, he was suffering from a mental disease or mental defect; and
(2) that the alleged shooting of Steve Saucier was the product of or result of this mental disease or mental defect then the law treats the defendant as not criminally responsible for the unlawful act and you must necessarily find the defendant NOT GUILTY BY REASON OF INSANITY."
[8] C.Cr.P. 782 states in part:

"... Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict...."