700 So.2d 1082 (1997)
STATE of Louisiana
v.
Donald SNYDER.
No. 97-KA-226.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 1997.
*1084 John M. Crum, District Attorney, Edgard, for Plaintiff-Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, for Defendant-Appellant.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.

STATEMENT OF THE CASE
On June 25, 1995, the St. John the Baptist Parish District Attorney filed a bill of information charging the defendant, Donald Snyder, with attempted first degree murder, a violation of LSA-R.S. 14:27 and 14:30, and attempted armed robbery, a violation of LSA-R.S. 14:27 and 14:64.
The defendant was arraigned on June 29, 1995, and entered a plea of not guilty. On August 23, 1995, the court denied the defendant's motion to suppress his confession. A jury of twelve persons was impaneled and sworn on March 19, 1996. On March 20, 1996, the jury found the defendant guilty of the responsive verdict of attempted second degree murder and not guilty of the charge of attempted armed robbery.
On March 27, 1996, the defendant filed a motion for a new trial. On April 17, 1996, the defendant filed a motion for a post-judgment verdict of acquittal. On May 8, 1996, the court denied the defendant's motion. On the same day, the state billed the defendant as a third felony offender[1] under the Habitual Offender Law, LSA-R.S. 15:529.1, to which the defendant pled not guilty.[2] On June 26, 1996, the court held a multiple offender hearing and adjudicated the defendant a third felony offender. The defendant was sentenced to sixty-two and a half (62 1/2) years at hard labor without the benefit of probation or suspension of sentence, but with credit for time served. The defendant filed two motions for reconsideration and correction of an illegal sentence, which were granted on October 10, 1996. Thereafter, on December 4, 1996, the defendant was resentenced as a second felony offender to serve fifty years at hard labor. The court stated that the defendant might be eligible for "good time" and parole, but did not give the defendant credit for time served.
*1085 On December 18, 1996, the trial court granted the defendant's application for post-conviction relief and reinstated his appellate rights. The defendant filed a motion for appeal on December 23, 1996, which was granted by the trial court on January 2, 1997.

FACTS
On April 30, 1995, the defendant, Donald Snyder, shot the victim, Humphrey Poche, in the chest, left hand and left thigh. The incident occurred in Reserve, Louisiana, at approximately 10:00 p.m. The victim and the defendant had been acquainted for about two weeks prior to the shooting. The defendant was the "middleman" for the victim's drug deals. Specifically, Donald Snyder would set up transactions with dealers so that Humphrey Poche could purchase crack cocaine. At the time of the shooting, Humphrey Poche had a two to three hundred dollar a day crack habit. He and the defendant Snyder smoked crack together often during their acquaintance.
The victim and the defendant lived approximately one fourth of a mile from each other in Reserve. At about 4:00 a.m. on April 30, 1995, the defendant walked to the victim's home and asked the victim to take him to pick up "Stacy" at the P & M Motel in Reserve. The victim and the defendant took Stacy back to the victim's apartment, smoked some crack and had sex with her. Later that morning, the defendant and the victim went to the Texaco station in Reserve where the victim obtained some crack from a dealer.
Later that day, around 8:00 p.m., the victim and the defendant went to AutoZone to purchase a part for the victim's truck. The store was closed and the defendant asked the victim for a ride to his apartment. The victim drove the defendant to a location near the defendant's residence. About fifteen minutes later, the defendant returned to the victim's apartment. The defendant then asked the victim to take him to the house of a relative who owed him an "8-ball" (eight ounces of crack cocaine). The victim drove his girlfriend's vehicle and the defendant rode in the passenger's seat. They ended up in a dark, secluded area near Northwest Fourth Street in Reserve. The defendant asked the victim to stop the car so that he could relieve himself. Before exiting the vehicle, the defendant gave the victim a crack pipe and said "hit on this." Shortly after the defendant got out of the car, the victim heard a gunshot on his left side. The victim turned to his left, looked out of the driver's side window, and saw the defendant standing there with a gun. The defendant shot Humphrey Poche in the left hand, left thigh, and the chest and then left the scene. The victim climbed through the passenger window, which had been shattered by the bullets, and ran to an apartment complex to get help. One of the residents called the police. The victim told Detective Gray, one of the first officers on the scene, that the defendant had shot him.
Sergeant Harry Troxlair, a crime scene investigator for the St. John the Baptist Parish Sheriff's Office, arrived on the scene at 10:37 p.m. He observed a 1988 Hyundai with the engine running and the lights on. He collected four spent .22 caliber casings from the ground on the driver's side of the vehicle and one spent .22 caliber casing from the ground behind the car. The next morning, Detective Todd Hymel of the St. John's Sheriff's Office, retrieved a .22 caliber pump rifle, with a sawed off barrel and butt, from the residence of Craig Lee.
Craig Lee, who also lived in Reserve[3], testified that the defendant came to his house at 11:00 p.m. on the night of the shooting. He said that the defendant looked nervous and was sweating. Lee further testified that the defendant had told him that he and a white man (the defendant is black and Humphrey Poche is white) were on 13th Street when somebody pulled a gun on them and shot the white man. Before the defendant and Lee left, the defendant went outside and came back with a gun, some bullets, and some clothes, and asked to leave them at Lee's house. Lee testified that he refused. *1086 However, the items were found in his backyard by Detective Todd Hymel.
Deputy Clarence Gray was on the scene around 10:17 p.m. on the evening of the shooting. Deputy Gray testified that the defendant called the sheriff's office later that evening and requested to speak to a detective. Since Deputy Gray knew the defendant, he went to the defendant's home and drove him to the sheriff's office. Deputy Gray further testified that Donald Snyder went with him freely and voluntarily, was not under arrest, and was not in any way restrained.
On May 1, 1995, at 12:55 a.m., the defendant gave a statement about the shooting to Detective Carl Baker. After the statement, the defendant was placed under arrest.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court committed reversible error by improperly instructing the jury on the elements and burden of proof required to convict for attempted second degree murder.

DISCUSSION
In this assignment of error, the defendant claims that the trial court incorrectly instructed the jury on the specific intent required to convict him of attempted second degree murder. The record reveals that the court twice instructed the jury in the following manner:
The defendant is charged with attempted first degree murder and attempted armed robbery. First of all, attempt is defined as follows: A person who has specific intent to commit a crime and who does an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended. It is immaterial whether, under the circumstances, he would have actually accomplished his purpose. Mere preparation to commit a crime shall not be sufficient to constitute an attempt.
The court then read the definition of first degree murder under LSA-R.S. 14:30, and continued as follows:
The following offenses are lesser, are responsive lesser offenses: Attempted second degree murder. The elements of attempted  I'm sorry, the elements of second degree murder are: One, the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm; or when the offender is engaged in the perpetration or attempted perpetration of armed robbery, first degree robbery or simple robbery even though he has no intent to kill or inflict great bodily harm. Thus, in order to convict the defendant of attempted second degree murder you must find: One, that the defendant had a specific intent to commit the crime of second degree murder; and, two, that the defendant did an act for the purpose of and tending directly toward the commission of the crime of second degree murder.
The defendant contends that as a result of the above instruction, the jury improperly convicted him of attempted second degree murder based on specific intent to inflict great bodily harm, rather than specific intent to kill.
The gravamens of attempted murder are the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Andrews, 95-129, p. 2 (La.App. 5 Cir. 11/15/95), 665 So.2d 454, 456; State v. Butler, 322 So.2d 189, 192 (La.1975). While a specific intent to inflict great bodily harm will support a conviction of murder, attempted murder requires the specific intent to kill. State v. Andrews, supra.
The Louisiana Supreme Court was presented with a challenge to a similar instruction in State v. Belgard, 410 So.2d 720 (La. 1982). The Belgard Court, however, refused to consider the challenge because the defendant did not object to the jury instruction at trial. Id. at 727.
In this case, the record reveals that the defendant failed to object to the jury instruction at trial.
As a general rule, a party must object at trial to an unacceptable jury charge in order to preserve the issue for appeal. LSA-C.Cr.P. *1087 art. 801 provides in pertinent part as follows:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefore shall be stated at the time of objection.
Furthermore, LSA-C.Cr.P. art. 841(A) states:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to correct the error. State v. Jynes, 94-745, p. 9 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, 95; State v. Price, 96-680, p. 5 (La.App. 5 Cir. 2/25/97), 690 So.2d 191, 194. Additionally, a defendant should not be allowed to gamble for a favorable verdict, and then complain on appeal about errors easily corrected by a contemporaneous objection. State v. Thomas, 427 So.2d 428, 433 (La. 1982); State v. Taylor, 93-2201, p. 7 (La.2/28/96), 669 So.2d 364, 368, cert. denied, ___ U.S. ___, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).
In this case, the guilty verdict actually rendered was surely unattributable to any error in the jury instructions. The evidence at trial showed that the defendant deliberately pointed a .22 caliber rifle at the victim and shot him three times: once in the left hand, in the left thigh, and in the chest. This was not a case of mistaken identity or random shooting. Accordingly, any error constitutes harmless error, and does not warrant a reversal of the conviction.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court committed reversible error by admitting a confession obtained in violation of appellant's fifth amendment right to remain silent.

DISCUSSION
In this assignment of error, the defendant complains that the trial court erred in admitting his confession because the state failed to prove that the defendant's fifth amendment right to remain silent was not violated. At issue is whether the state proved that the defendant's confession was voluntary.
Before the state may introduce a confession or statement for consideration by the jury, the state must prove beyond a reasonable doubt that the statement or confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. State v. Pittman, 95-382, p. 24 (La.App. 5 Cir. 10/1/96), 683 So.2d 748, 762; LSA-C.Cr.P. 703(D); LSA-R.S. 15:451. If the confession or statement was elicited during a custodial interview, the state must also prove that the declarant was advised of his or her constitutional rights. State v. Foret, 96-281, p. 28 (La.App. 5 Cir. 11/14/96), 685 So.2d 210, 221; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Crook, 517 So.2d 1131 (La.App. 5 Cir.1987), writ denied, 541 So.2d 885 (La.1989). A determination of voluntariness is made on a case-by-case basis depending on the facts and circumstances of each situation. State v. Pittman, supra, at p. 25; 683 So.2d at 762. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement will not be overturned unless unsupported by the evidence. State v. Pittman, supra, at p. 25, 683 So.2d at 762; State v. Jackson, 414 So.2d 310 (La.1982).
The trial court held a hearing and denied the motion to suppress. Prior to trial, the *1088 state properly notified the defendant of its intent to introduce the defendant's confession into evidence as required by LSA-C.Cr.P. art. 768. At trial, Detective Baker testified that the defendant gave a tape recorded statement to him on the evening of the shooting. After Detective Baker testified about the circumstances surrounding the giving of the confession, the trial court admitted the tape into evidence over the objection of the defendant, and the tape was played for the jury.
The defendant argues that the state failed to prove that the confession was voluntary. At trial, the defense counsel asked Detective Baker about the context of the defendant's remark, "stop it," made during the taped statement. Detective Baker answered in the following manner:
A (Detective Baker):
No, sir. He wasn't using my notes. He asked me to stop it [the cassette player] so he could take my notes and try to look at them. And I told him, "No, we're going to keep going. If you don't remember, you had stated earlier to me", and I took my notes and looked at them, "That about two-thirty you had walked from your house on Beech Grove and went back to Humphrey's house and you said Humphrey and Stacy were still there". And he said, "Uh huh", and we continued with the interview.
The defendant argues that the state failed to prove that the confession was voluntary since the state did not prove that when the defendant said to "stop it," he meant something besides to stop the interview, invoking his constitutional rights. However, at trial, the judge heard and apparently accepted Detective Baker's explanation for the defendant's "stop it" comment. Additionally, the statement itself shows that the defendant continued to answer Detective Baker's questions even after the above exchange.
Therefore, considering the foregoing, the trial court did not err in admitting the confession. The trial judge heard Detective Baker's testimony and concluded that the defendant's confession was voluntary. The evidence supports the trial judge's conclusion, which should not be disturbed on appeal. State v. Pittman, supra.
Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
The trial court erred in refusing to grant a post-verdict judgment of acquittal when there was insufficient evidence to support a conviction of attempted second degree murder due to appellant's state of intoxication at the time of the shooting.

DISCUSSION
In this assignment of error, the defendant contends that the evidence at trial was legally insufficient to prove beyond a reasonable doubt that the defendant had the specific intent to kill Humphrey Poche. In particular, the defendant argues that his intoxication at the time of the offense precluded his forming the requisite specific intent.
The defendant filed a motion for a post-verdict judgment of acquittal on April 17, 1996, and the trial court denied the motion on May 8, 1996. It should be noted that the defendant did not file a notice of intent to use intoxication as a defense as required by LSA-C.Cr.P. art. 726. However, the State did not object to evidence of defendant's intoxication at trial. Therefore, the merits of this claim will be discussed.
According to LSA-C.Cr.P. art. 821(B), a defendant is entitled to a post-verdict judgment of acquittal only if the trial court finds that the evidence, when viewed in a light most favorable to the state does not reasonably permit a finding of guilty. That article codifies the standard for sufficiency of the evidence established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See State v. Smith, 441 So.2d 739 (La.1983). State v. Dorsey, 593 So.2d 1372, 1374 (La.App. 5 Cir.1992).
The reviewing court must determine whether the evidence, direct and circumstantial, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Hawkins, 96-0766, p. 7 *1089 (La.1/14/97), 688 So.2d 473, 479; Jackson v. Virginia, supra; State v. Nguyen, 95-1055, pp. 3-4 (La.App. 5 Cir. 3/26/96), 672 So.2d 988; writ denied, 96-1019 (La.10/4/96); 679 So.2d 1377, and writ denied, 96-2087 (10/7/96), 680 So.2d 639.
The defendant was convicted of attempted second degree murder, a violation of LSA-R.S. 14:27 and 14:30.1. As previously noted, attempted second degree murder requires the specific intent to kill. LSA-R.S. 14:27 and 14:30. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances and the actions of the accused. State v. Andrews, 95-129 at p. 2; 665 So.2d at 456.
In this case, the intent to kill may be inferred from the defendant's actions and the severity of the victim's injuries. On the night of the shooting, the defendant exited the passenger's side of the vehicle and walked around to the driver's side of the vehicle where the victim was sitting. He pointed a .22 caliber rifle at the victim and shot him three times.
Humphrey Poche's medical records reveal that he was shot in the chest, in the left hand and in the left thigh. His condition was critical, and his wounds required multiple dressings. Additionally, the bullets caused fractures in the victim's left hand, and metallic fragments were found in his chest, left thigh, and left hand.
In support of his argument, the defendant contends that the evidence showed that he had smoked crack all day and that he used a.22 caliber rifle, instead of a shotgun. The defendant further argues that since he did not fire all of the bullets and left the victim alive, the evidence does not support a finding of specific intent to kill. However, the jury heard all of this evidence and apparently did not give it the weight that defendant would urge.
Viewed in the light most favorable to the prosecution, the evidence presented at trial is legally sufficient to support the defendant's conviction of attempted second degree murder. Jackson v. Virginia, supra. Considering the foregoing, the state met its burden in this case.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The trial court erred in imposing a constitutionally excessive sentence.

DISCUSSION
In this assignment of error, the defendant argues that his sentence of fifty years at hard labor is constitutionally excessive. Specifically, the defendant argues that the sentence is excessive because the trial court did not state that it considered the defendant's age of forty-eight years as a factor in imposing sentence.
In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Daigle, 96-782 p. 2 (La.App. 5 Cir. 1/28/97); 688 So.2d 158, 159; State v. Jackson, 597 So.2d 1188 (La.App. 5 Cir.1992). The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Daigle, supra; LSA-C.Cr.P. art. 881.4(D).
After the defendant's conviction of attempted second degree murder, the state filed a bill of information charging the defendant as a third felony offender in violation of the Habitual Offender Law, LSA-R.S. 15:529.1. On June 26, 1996, the court adjudicated the defendant a third felony offender and sentenced him to sixty-two and a half (62 1/2) years at hard labor, without the benefits of probation or suspension of sentence. The court stated that the sentence would be concurrent with any sentence for any prior offense and gave the defendant credit for time served on the current offense.
After sentencing, the defendant filed two motions for reconsideration and correction of an illegal sentence which were granted on October 10, 1996. On December 4, 1996, the *1090 trial court resentenced the defendant as a second felony offender to serve fifty years at hard labor, noting that he might be eligible for parole and diminution of sentence.
At the time of the offense in April 1995, the punishment for attempted second degree murder, LSA-R.S. 14:27 and 14:30.1, was imprisonment at hard labor for not more than fifty years. LSA-R.S.14:27(D)(1). The Habitual Offender Law, LSA-R.S. 15:529.1(A)(1)(a), provides the punishment for a person adjudicated a second felony offender as follows:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Therefore, the sentencing range for the defendant was from twenty-five years to one hundred years. The defendant's sentence of fifty years was within this range.
In imposing sentence, the trial judge stated that she had considered the suffering of the defendant's family. She also noted that the defendant had expressed sincere remorse for his actions. The trial judge stated that she nevertheless must consider other factors such as society and the serious nature of the defendant's crime in determining the appropriate sentence. She noted that in the present drug-related incident, the defendant had fired more than one shot at the victim. Additionally, the presentence investigation revealed that the defendant committed this offense while on parole for distribution of cocaine.
Notwithstanding, the defendant argues that the sentence was excessive because the trial judge did not consider the effects of a fifty-year sentence on the defendant, a forty-seven year old man. However, the trial judge knew the defendant's age because he testified at the sentencing hearing that he was forty-seven years old. Thus, the record does not support the defendant's contention that the trial judge did not consider his age in determining his sentence.
Considering the foregoing, the trial judge has not abused her discretion in sentencing the defendant. The sentence was within the sentencing range and the record supports the judge's decision to sentence the defendant to fifty years at hard labor. Therefore, the sentence should not be disturbed on appeal. LSA-C.Cr.P. 881.4(D).
This assignment of error has no merit.

ERRORS PATENT
The defendant has requested a review for errors patent.
We reviewed the record and find that the trial judge did not give the defendant credit for time served pursuant to LSA-C.Cr.P. art. 880, following the defendant's resentencing as a second felony offender. This article mandates that the defendant receive credit for time spent in actual custody prior to the imposition of sentence. Therefore, the defendant's sentence is amended to give him credit for time actually spent in custody prior to sentencing.

DECREE
Accordingly, the conviction is affirmed and the fifty year sentence is amended to give credit for time served and affirmed as amended.
CONVICTION AFFIRMED, SENTENCE AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] The minute entry of May 8, 1996 states that the defendant was "billed" as a second felony offender. However, the bill filed by the district attorney reflects that the state was attempting to enhance the defendant's sentence as a third felony offender under the Habitual Offender Law, LSA-R.S. 14:529.1.
[2] It should be noted that although the minute entry of May 8, 1996 reflects that the defendant "pled not guilty" to the multiple bill, the appropriate response is to admit or deny the allegations in the bill. LSA-R.S. 15:529.1(D)(1)(a).
[3] At the time of trial Craig Lee was in Angola serving a sentence of five years for distribution of cocaine.