STATE OF LOUISIANA

VERSUS

ED RAYMOND VEILLON, JR.

NO. 19-KA-606

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 18,226, DIVISION "C"
HONORABLE EMILE R. ST. PIERRE, JUDGE PRESIDING


July 29, 2020


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.


**CONVICTIONS AND SENTENCES AFFIRMED, REMANDED FOR**
**CORRECTIONS OF RECORD**
 **JJM**
 **SJW**
 **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Joel T. Chaisson, II
    Louis G. Authement

COUNSEL FOR DEFENDANT/APPELLANT,
ED RAYMOND VEILLON, JR.
    Mary Constance Hanes

DEFENDANT/APPELLANT,
ED RAYMOND VEILLON, JR.
    In Proper Person

**MOLAISON, J.**

Defendant, Ed Raymond Veillon, Jr., appeals his May 2, 2019 conviction for second degree murder and attempted murder. In his counseled brief, defendant claims the evidence was insufficient to support convictions of second degree murder and attempted second degree murder, as defendant's state of intoxication prevented him from forming a specific intent to kill. In a supplemental *pro se* brief, defendant also challenges the sufficiency of the evidence, as well as claiming the trial court abused its discretion in denying the defense's objection to a juror and that a conflict of interest should have resulted in the recusal of an assistant district attorney. We find no merit to the assignments of error, in defendant's counseled and *pro se* briefs. Therefore, we affirm the convictions and sentences.

**FACTUAL HISTORY**

On April 22, 2018, defendant spoke to a 9-1-1 operator requesting paramedics for his wife, Nicole, and fifteen-year-old son, Seth, who were bleeding. He told the operator that his gun went off after an argument "over stupid sh*t." He reported his nine-year-old daughter, O.V.,[1] was trying to help her mom, who was still breathing.

O.V. waved down the officers dispatched to her residence on Lynn Drive in St. Charles Parish, Louisiana. Sergeant Jose Alverenga, shift supervisor for St. Charles Parish Sheriff's Office, arrived and observed two bodies on the floor by the kitchen. He administered CPR to the female, Nicole Veillon, who was non-responsive and incoherent. Seth showed no signs of life. Sergeant Alverenga observed defendant seated in a recliner with an empty holster by his right foot. Defendant was not able to tell Sergeant Alverenga where the gun was located.

---

[1] Due to her status as a minor, O.V. will be referred to be her initials to protect her identity. *See State v. Barnett*, 18-254 (La. App. 5 Cir. 4/3/19), 267 So.3d 209, 235 n.2.

Deputy Terry Dabney located the gun on other side of the coffee table from the defendant, with the magazine out. Nicole, defendant's wife of twenty years, was transported to the hospital; she was shot in the hand and neck and suffered a stroke. Nicole remained at a rehabilitation facility for two months after the shooting.

Sergeant Jeremy Pitchford arrived later and spoke to the defendant who indicated that his son, angry about a break up, was the shooter. He spoke to defendant in an ambulance which transported him to University Medical Center for treatment to a gunshot wound to his knee.

Sergeant Pitchford observed a bullet wound to Seth's chest that did not appear self-inflicted, and he obtained a search warrant for the house with the assistance of Detective Jenni Barrett from the Criminal Investigation Division. Crime scene technician Jason Troxler assisted in the execution of the search warrant. He observed Seth was still wearing his glasses, and there were several bullet holes in his back when Seth was moved. He located a black semi-automatic handgun on the living room floor. Next to a chair was a bottle of alcohol that was not taken into evidence. The ejected magazine, containing one live bullet, was located below the gun. Another live bullet was located near the gun. Technicians located twelves casings, most in a ten-foot radius of one another. Projectiles had traveled through the living room walls and the floor of the residence. A gun cleaning kit and a green ammo can with several boxes of 9mm bullets were found in a bedroom.

Detective Barrett took a statement from O.V. at the neighbor's house later that evening.[2] Detective Holly Laurent from the St. Charles Parish Juvenile Division conducted a forensic interview of O.V. O.V. told Detective Laurent that her parents argued because her father drank her mother's wine. When they stopped arguing, defendant loaded his gun and she hid under the kitchen table. She

---

[2] Detective Barrett was not able to get a statement from Nicole Veillon until May 3, 2018.

saw defendant walk up to her mother, who pushed him, and defendant shot her mother. She ran outside when Seth got out of his chair to push defendant, and she returned to house after hearing more gunshots. O.V. said it sounded like three gun shots but thinks it was only one because she only saw one shot in her mother and Seth. O.V. called 9-1-1 at her father's request. She gave the phone to her father, and she put a towel on her mother's neck.

On April 23, 2018, Dr. Yen Van Vo, an expert in the field of forensic pathology, conducted a forensic examination of Seth. Seth was 5'6" tall and weighed 108 pounds. The forensic examination revealed that Seth sustained four gunshot wounds. Dr. Vo determined that gunshot wound "A," which entered the right side of his chest and exited his right lower abdomen, was an "intermediate range entrance gunshot wound" based on the presence of stippling or scraping on Seth's chin in the pathway of the wound. Gunshot wound "B" entered on the left side of Seth's upper back, going into the left side of the chest and left lung, and out the right side of the chest before embedding in the right shoulder. Gunshot wounds "C," "D," "H," and "I" were caused by a bullet that appeared to go through Seth's left arm and re-entered and exited the left side of his back. "Dark soot, as well as stippling" surrounded this wound, which Dr. Vo indicated refers to a "contact or near contact" with the gun. The final wound "E" entered on the left side of Seth's back, went through the left lung, vertebra, right chest cavity, and lacerated the right lung before exiting the back side of Seth's right arm. Dr. Vo determined Seth's cause of death was multiple gunshot wounds, and he recommended the St. Charles Parish Coroner make a determination of homicide.

**PROCEDURAL HISTORY**

On May 23, 2018, a St. Charles Parish Grand Jury indicted defendant on one count of second degree murder of Seth Veillon in violation of La. R.S. 14:30.1

(count one) and one count of attempted second degree murder of Nicole Veillon in violation of La. R.S. 14:27 and 14:30.1 (count two). Defendant pled not guilty to both counts at his arraignment on May 29, 2018. He was represented by Deanne Roussel Williams until *David* Moyer was appointed on September 7, 2018.

The trial began on May 1, 2019. St. Charles Parish Assistant District Attorney Connie Aucoin tried the case, with the assistance of Deane Boyd.[3] During jury selection, the defense used all twelve preemptory strikes. Juror Rosalind Brooks was challenged for cause. She testified that she had experienced a murder in her family, when her grandfather shot her father. She stated that she was not very partial to guns, but that she "won't hold prejudice." The trial judge denied the challenge for cause, and the defense did not use a peremptory strike.

The jury heard witness testimony, including the testimony of O.V. and Nicole. O.V. testified that she did not recall either Seth or her mom holding a gun that day. She was under the kitchen table when her dad shot the gun. He shot her mom. Afterwards, Seth got out of his chair and tried to push defendant down, but defendant shot Seth. O.V. ran outside when Seth got out of his chair. She came back inside and called 9-1-1 and put a towel on her mother's neck. She affirmed that everything in her forensic interview was true; the jury was shown a video recording of the interview.

Nicole testified that she recalled having a ten to fifteen minute argument with the defendant on the morning of April 22, 2018 over him drinking half of her bottle of wine. Later that day, she was sitting next to her son while he played games on the computer; they were sharing earbuds to listen to music and talking. She remembered defendant getting angry that she was talking about him, but she told him she was not arguing with him anymore. She did not recall anything else

---

[3] Ms. Boyd was introduced at the first stage of voir dire, but the record is not clear as to her position in the district attorney's office or whether she participated in other parts of the trial.

from the evening of the shooting. She had to learn how to talk again, and it took her a year to "learn how to do everything." She was still undergoing physical therapy at the time of her testimony.

The jury listened to the recording from the motor vehicle recordings (MVR) of Sergeant Alverenga and Deputy Dabney which captured audio of the deputy interactions at the scene. O.V. told Sergeant Alverenga that her mom was still breathing. Sergeant Alverenga sent her outside where she directed other deputies to the scene before a neighbor assisted her. Defendant was unable to tell deputies where the gun was located. He told Sergeant Alverenga that his son shot him, he was the one with the gun, and there was a struggle. He repeatedly stated "my wife needs some help" and "my son had the gun." A deputy located the gun and found that the magazine was empty. Defendant asked if anyone had seen his daughter. Defendant told officers that Seth had broken up with his girlfriend, and had gotten upset that defendant talked about it. He later told officers to "blame it on me, don't blame it on my son." The jury also heard the 9-1-1 call.

Nick Lege, a crime scene technician, photographed defendant prior to his release from the hospital. Defendant had stippling on his left outer wrist and what appeared to be dried blood on his left palm. No other injuries, scratches, lacerations, or bruising were noted. The twelve recovered casings were determined by the Louisiana State Police Crime Lab firearms examination and analysis expert, Chelsea Richardson, to have been fired from the 9mm Ruger pistol recovered from the scene.

Defendant did not present any witnesses. Testimony was elicited regarding defendant's state of intoxication. Nicole testified that on the day of the shooting, defendant "always had a can in his hand," and she estimated that he started drinking around 8:00 a.m. or 9:00 a.m. She testified that he drank "a lot" that day and was drunk. Sergeant Alverenga testified that defendant was "seriously

impaired" with slurred speech and bloodshot eyes. Sergeant Alverenga and Office Dabney each testified that defendant appeared intoxicated and had slurred speech and blood-shot eyes. Sergeant Pitchford testified that defendant appeared intoxicated "but he also appeared to be like he was pretending to be more incoherent than he was." He did not recall the defendant having slurred speech.

On May 2, 2019, after the close of evidence, the twelve-person jury returned a unanimous verdict of guilty as charged on both counts of the indictment. On July 2, 2019, the trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on count one and to a concurrent sentence of fifty years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on count two. The defendant filed a timely motion for appeal, which was granted on July 22, 2019.

## DISCUSSION

Appellate counsel claims the evidence used to convict defendant was insufficient to support convictions of second degree murder and attempted second degree murder. In a supplemental *pro se* brief, defendant also challenges the sufficiency of the evidence, additionally contending that the trial court abused its discretion in denying the defense's objection to juror Rosalind Brooks and that a conflict of interest should have resulted in the recusal of Assistant District Attorney Deanne R. Boyd.

## FIRST ASSIGNMENT OF ERROR

Defendant argues there is insufficient evidence to support his convictions of second degree murder of Seth and attempted second degree murder of Nicole because a rational jury would not have found defendant guilty beyond a reasonable doubt on either count. Defendant argues that he could not have formed specific intent to commit second degree murder of Seth or to commit attempted second

degree murder of Nicole due to his state of intoxication.  Alternatively, defendant argues the evidence presented at trial supports that he is guilty of, at most, manslaughter and attempted manslaughter.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-674 (La. 6/9/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).  In cases involving circumstantial evidence, the trial court must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events.  Rather the reviewing court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d. 78, 83; *State v. Washington*, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

An appellate court's primary function is not to re-determine the defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses.  Rather, the appellate court's function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury's conclusion. *State v. Cole*, 15-358 (La. App. 5 Cir. 12/23/15), 182 So.3d 1192, 1198-99 (citing *State v. Banford*, 94-883

(La. App. 5 Cir. 3/15/95), 653 So.2d 671, 677). The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *Id.* (citing *State v. Workman*, 14-559 (La. App. 5 Cir. 4/15/15), 170 So.3d 279, 289, *writ denied*, 15-909 (La. 3/24/16), 190 So.3d 1189). When there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. *Id.* (citing *State v. Brown*, 01-41 (La. App. 5 Cir. 5/30/01), 788 So.2d. 694, 701).

Defendant was convicted of one count of second degree murder in violation of La. R.S. 14:30.1. At trial, the jury was instructed on second degree murder as a specific intent crime, defined as the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. *See* La. R.S. 14:30.1. Defendant also was convicted of one count of attempted second degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1. According to La. R.S. 14:27(A), to be guilty of an attempt to commit an intended offense, it must be found that a person "having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly towards the accomplishing of his object." The crime of attempted murder requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. *State v. Bradstreet*, 16-80 (La. App. 5 Cir. 6/30/16), 196 So.3d 876, 885, *writ denied*, 16-1567 (La. 6/5/17), 220 So.3d 752.

Specific intent is a required element for both offenses. Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from the

circumstances and the defendant's actions. *State v. Mickelson*, 12-2539 (La. 9/3/14), 149 So.3d 178, 182; *State v. Broaden*, 99-2124 (La. 2/21/01), 780 So.2d 349, 362, *cert. denied*, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2002); *State v. Graham*, 420 So.2d 1126, 1127 (La. 1982).

Specific intent may be formed in an instant. *Mickelson*, 149 So.3d at 183; *State v. Cousan*, 94-2503 (La. 11/25/96), 684 So.2d 382, 390. It is well established that specific intent may be inferred from the act of pointing a gun and firing at a person. *See Broaden*, *supra*; *State v. Hidalgo,* 95-319 (La. App. 5 Cir. 1/17/96), 668 So.2d 1188, 1197; *State v. Slang*, 94-332 (La. App. 5 Cir. 11/16/94), 646 So.2d 1037, 1040, *writ denied*, 94-3063 (La. 4/7/95), 652 So.2d 1344. Specific intent can be inferred from the intentional use of a deadly weapon, from the circumstances of a defendant's actions, and the extent and severity of a victim's injuries. *State v. Patterson*, 10-415 (La. App. 5 Cir 1/11/11), 63 So.3d 140, 148, *writ denied*, 11-338 (La. 6/17/11), 63 So.3d 1037.

Voluntary intoxication is a defense to a specific intent offense if the circumstances demonstrate that intoxication precluded formation of the requisite intent. *See* La. R.S. 14:15; *See also Mickelson*, *supra*; *State v. Legrand*, 02-1462 (La. 12/3/03), 864 So.2d 89, 95-96, *cert. denied*, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005). La. R.S. 14:15(2) provides that "[w]here the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime." In this case, the trial court instructed the jury on voluntary intoxication as a defense.

When intoxication is used as a defense, a defendant must prove by a preponderance of evidence that he was, in fact, intoxicated. *State v. Dammeron*, 98-378 (La. App. 5 Cir. 9/29/98), 719 So.2d 1151, 1154, *writ denied*, 98-2830 (La. 2/26/99), 738 So.2d 1067. When circumstances exist which indicate that

intoxication could have precluded specific intent, the burden shifts to the State to negate that defense by showing beyond a reasonable doubt that specific intent was present despite the defendant's alleged intoxication. *State v. Patterson*, 99-994 (La. App. 5 Cir. 1/25/00), 752 So.2d 280, 284, *writ denied*, 00-753 (La. 2/9/01), 785 So.2d 26.

Neither the evidence submitted at trial, nor the testimony of any witness, establishes with certainty when or how much alcohol defendant consumed. Defendant made no statements indicating that he was too intoxicated to know or understand what transpired. Defendant was able to interact with the 9-1-1 operator and responding officers and was capable of answering their questions. When the 9-1-1 operator directly asked defendant who had the gun, defendant had the presence of mind to provide deflective responses before stating that his son had the gun. Furthermore, defendant was cognizant enough to realize the gravity of the situation following the shooting as he repeatedly requested paramedics during the 9-1-1 call, and he instructed O.V. to open the gate and ensure responders knew where the house was located. He was able to recall his daughter's grandfather's phone number and provide it to law enforcement. Defendant also repeatedly informed responding officers that his wife needed help.

The jury was presented with somewhat conflicting testimony as to whether defendant appeared intoxicated to responding officers. Although Sergeant Alvarenga and Deputy Dabney testified that defendant appeared intoxicated, Sergeant Alvarenga indicated that defendant responded to all of his questions, was conscious the entire time, and directed him to light switches. Deputy Dabney testified the defendant was able to respond to several questions asked of him, able to provide the names and ages of his entire family, asked about his daughter, stated several times that Nicole was still breathing, and asked for help for his wife.

Sergeant Pitchford testified that defendant "appeared to be like he was pretending to be more incoherent than he was."

Nicole testified that defendant was "drunk" the day of the incident, but she did not provide any information on his state of intoxication prior to or during the shooting. She said that she had little memory of the shooting. She also indicated that he drank regularly.

The jury was free to weigh the testimony as it saw fit. Whether intoxication is sufficient to negate specific intent is a question for the trier of fact. *Mickelson*, *supra* (citing *State v. Davis*, 92-1623 (La. 5/23/94), 637 So.2d 1012, 1020, *cert. denied*, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994)). We find it reasonable, in light of the limited evidence establishing the amount of alcohol consumed by defendant prior to the shooting and his level of intoxication at the time of the shooting, that the jury found defendant had the ability to reason and make decisions, found Sergeant Pitchford's testimony credible and concluded that defendant did not meet his burden of establishing a state of intoxication by a preponderance of the evidence. Even if defendant had presented sufficient evidence to prove intoxication and shift the burden to the State to negate that defense, the State presented sufficient evidence to establish beyond a reasonable doubt that specific intent was present despite alleged intoxication.

The State was required to prove defendant's specific intent to kill or cause great bodily harm to Seth and specific intent to kill Nicole. This Court has previously inferred intent to kill from the defendant's actions and the severity of the victim's injuries. In *State v. Snyder*, 97-226 (La. App. 5 Cir. 9/30/97), 700 So.2d 1082, the defendant exited the passenger side of a vehicle, walked around to the driver's side of the vehicle where the victim sat, and shot the victim three times with a .22 caliber rifle. The victim was shot in the chest, in the left hand, and the left thigh. This Court noted that the jury heard the evidence, as well as the

defendant's arguments in support of an intoxication defense, and did not give it the weight the defendant urged. *Id.* at 1099. Viewing the evidence in the light most favorable to the prosecution, this Court held the evidence presented at trial was legally sufficient to support the defendant's conviction of attempted second degree murder. *Id.* at 1089.

In the present case, the forensic evidence showed that Seth was shot four times, including two gunshot wounds to the back. Officer testimony and a 9-1-1 recording indicate that defendant failed to render aid to Seth. Defendant's statements that Seth had the gun were contradicted by the testimony and statements of O.V., who saw defendant with the gun and indicated that Nicole was shot first. Additionally, defendant's statement that Seth was angry over a breakup was rebutted by information received by Detective Barrett. When factors such as the use of a deadly weapon, the number of gunshot wounds sustained by Seth, and defendant's uncorroborated statements placing fault on fifteen-year-old Seth are considered, viewing the evidence in the light most favorable to the prosecution, we find the State proved beyond a reasonable doubt that defendant had the specific intent to kill or inflict great bodily harm upon Seth Veillon.

As to attempted second degree murder of Nicole, O.V. watched defendant load a gun, approach Nicole, and fire a shot at her. There was no testimony to contradict O.V.'s account that defendant shot Nicole before Seth was shot. Nicole testified that defendant approached her and accused her of talking about him. She testified that she was shot in the neck. As previously noted, specific intent may be inferred from the act of pointing a gun and firing at a person. Additionally, defendant's statements on the 9-1-1 call show that he was aware Nicole required aid, however, there is no indication that he rendered aid or assistance. Instead, nine-year-old O.V. tried to stop her mother's bleeding, and defendant was seated in a recliner when Sergeant Alvarenga and Officer Dabney arrived on scene.

Considering defendant's act of loading his gun, his act of aiming a gun and firing it at Nicole, and his failure to render aid, we find, viewing the evidence in the light most favorable to the prosecution, that the State proved beyond a reasonable doubt that defendant had the specific intent to kill Nicole Veillon.

Even where the defense has presented sufficient evidence of intoxication, this Court has previously found it reasonable for a trier of fact to reject the defense of intoxication where the State proves specific intent was present beyond a reasonable doubt. This Court has found specific intent to kill based on a defendant arguing with the victim the morning of the murder and shooting the victim three times at close range, including a shot to the back of the head. *State v. Edwards*, 01-116 (La. App. 5 Cir. 6/27/02), 790 So.2d 109, *writ denied*, 01-2235 (La. 8/30/02), 823 So.2d 935. The totality of the evidence in this case described previously establishes the requisite specific intent as to both counts. We find it particularly convincing that defendant had the presence of mind to attempt to place the fault on fifteen-year-old Seth. In *State v. Patterson*, 99-99 (La. App. 5 Cir. 1/25/00), 752 So.2d 280, 285, this Court found specific intent was supported by the defendant speaking "as if he knew what he was saying" and his statement that he attacked the victim because the victim tried to set him up, despite evidence of defendant's consumption of "a good deal of alcohol" on the day of the murder.

In defendant's alternative argument, he contends the evidence presented at trial supports that he is guilty of, at most, manslaughter and attempted manslaughter.[4] Defendant avers there is a preponderance of evidence to establish that he "was provoked and acted 'in sudden passion or heat of blood.'" La. R.S. 14:31(A) defines manslaughter as homicide "committed in sudden passion or heat

---

[4] A specific intent to kill is not necessary for a conviction of manslaughter. *Devillier*, *infra.* However, to support a conviction for attempted manslaughter, the State must prove that the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal. *Id.* (citing *State v. Ducksworth*, 17-35 (La. App. 5 Cir. 12/13/17), 234 So.3d 225, 231).

of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."

In order to be entitled to the lesser verdict of manslaughter, as well as to the lesser verdict of attempted manslaughter, the defendant is required to prove the mitigating factors of "sudden passion" and "heat of blood" by a preponderance of the evidence. *State v. Devillier*, 17-572, (La. App. 5 Cir. 10/17/18), 258 So.3d 230, 255, *writ denied*, 18-1855 (La. 10/8/19), 280 So.3d 589; *State v. Thompson*, 14-764 (La. App. 5 Cir. 1/28/15), 167 So.3d 884, 890. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. *Thompson, supra.* The question for the reviewing court is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. *Thompson, supra.*

There was no evidence presented of provocation by the victims. This Court has noted that "[a]n argument alone does not constitute sufficient provocation to reduce murder to manslaughter." *State v. Burse*, 19-381 (La. App. 5 Cir. 2/12/20), 289 So.3d 690; *State v. Thompson*, 18-273 (La. App. 5 Cir. 11/28/18), 259 So.3d 1257, 1267, *writ denied*, 18-2077 (La. 9/6/19), 278 So.3d 372 (citing *State v. Johnson*, 06-623 (La. App. 3 Cir. 11/2/06), 941 So.2d 696, 702, *writ denied*, 06-3024 (La. 9/14/07), 963 So.2d 995). Furthermore, in cases where a defendant armed himself with a deadly weapon prior to engaging a victim, this Court has concluded the trier of fact could have found the mitigatory factors were not established by a preponderance of the evidence. *State v. Mills*, 04-489 (La. App. 5 Cir. 3/29/05), 900 So.2d 953, 961, *writ denied*, 05-1470 (La. 1/13/06), 920 So.2d 235. In the *Mills* case, we found the defendant failed to show sufficient provocation to warrant a verdict of manslaughter when the defendant and the

victim engaged in a verbal altercation prior to the defendant leaving the room and returning with a gun. *Id.*

Nothing in the record suggests Nicole or Seth initiated the confrontation, provoked defendant, or engaged in aggressive behavior. Rather, O.V.'s testimony indicates that Nicole pushed defendant after he approached her while carrying the weapon he had just loaded. Seth pushed the defendant after defendant shot Nicole. The two victims were shot after they reacted to defendant's actions—Nicole was shot after she pushed defendant away when he approached her with a loaded gun, and Seth was shot as he attempted to intervene in the situation after defendant shot his mother. Viewing the evidence in a light most favorable to the prosecution, we find that a rational jury could have found that defendant failed to show by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" to justify the lesser verdict of manslaughter, or attempted manslaughter.

Based on defendant's actions, viewing the evidence in a light most favorable to the prosecution, we find that a rational jury could reasonably have found defendant had the specific intent to kill Nicole and the specific intent to kill or inflict great bodily harm on Seth to support a finding of attempted second degree murder and second degree murder.


**PRO SE FIRST ASSIGNMENT OF ERROR**

Defendant's *pro se* brief's first assignment of error raises the intoxication defense addressed in the previous section.[5] Defendant also raises the issue "that legal insanity, can in some cases, be produced by voluntary intoxication." An insanity defense was not preserved for review. La. C.Cr.P. art. 651 provides that

---

[5] In his *pro se* brief, defendant cites to medical journal articles concerning blood ethanol testing and the effects of a blood alcohol concentration level of 0.237 milligrams per deciliter on an individual's mental, physical, and emotional faculties. As the content of the cited articles was not argued at trial nor were the articles themselves admitted at trial, we are precluded from reviewing the issue on appeal. *See* Uniform Rules of Court – Courts of Appeal, Rule 1-3. This court has no jurisdiction to receive new evidence. *State v. Crawford*, 14-364 (La. App. 5 Cir. 12/23/14), 166 So.3d 1009, 1019 n.6.

"[w]hen a defendant is tried upon a plea of 'not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible. In the absence of a plea of insanity, evidence of insanity or mental defect is not admissible as a complete defense or for the purpose of negating specific intent. *State v. Williams*, 11-427 (La. App. 5 Cir. 2/28/12), 88 So.3d 1102.

In the instant case, defendant entered only a plea of "not guilty." Based on La. C.Cr.P. art. 651 and the holding of *Williams*, to the extent defendant asserts an insanity defense on appeal, this issue is not properly before this Court for review.

**PRO SE SECOND ASSIGNMENT OF ERROR**

In his *pro se* brief, defendant contends the trial court erred in denying a challenge for cause against juror Rosalind Marie Brooks. Defendant argues that Ms. Brooks' family history of her grandfather shooting her father would not allow her to be impartial to defendant. Defendant asserts he exhausted all twelve of his peremptory challenges prior to Ms. Brooks' name being called by the trial court because he "used the remainder of the peremptory challenges to ensure that the potential jurors who 'did not believe that intoxication can be used as a defense' had been struck."

During the first panel of *voir dire*, defendant used ten peremptory strikes to remove potential jurors. Ms. Brooks participated in the second panel of *voir dire*. During a bench conference, Ms. Brooks disclosed that her father had been shot by his father and died years later as a result of the shooting. The court asked the parties if they stipulated to cause, but the attorneys for both sides further questioned Ms. Brooks, and elicited her assent that she could listen to the facts of this case and give the defendant a fair trial. She agreed that her past would not influence her in this case and that she would not hold prejudice against the defendant. Defense counsel noted an objection for cause, and later used his two

remaining peremptory challenges to strike two potential jurors who were ahead of Ms. Brooks on the jury panel.[6]

The Sixth Amendment of the United States Constitution guarantees the accused the right to a trial by an impartial jury. *State v. Anderson*, 06-2987 (La. 9/9/08), 996 So.2d 973, 995, *cert. denied*, *Anderson v. Louisiana*, 556 U.S. 1165, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009). La. Const. Art. I, §17 guarantees the right to full *voir dire* examination of prospective jurors and to challenge those jurors peremptorily. *Id*. The number of challenges is fixed by law. *Id*. La. C.Cr.P. art. 799 provides that in trials of offenses punishable by death or necessarily imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the State shall have twelve peremptory challenges for each defendant.

The purpose of *voir dire* is to determine the qualifications of prospective jurors by testing their competency and impartiality and to assist counsel in articulating intelligent reasons for exercising cause and peremptory challenges. *State v. Holliday*, 17-1921 (La. 1/29/20), 2020 WL 500475, at *14 (citing *State v. Stacy*, 96-0221 (La. 10/15/96), 680 So.2d 1175, 1178). La. C.Cr.P. art. 797(2) provides a ground for a cause challenge when:

> The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.

Prejudice is presumed when a challenge for cause is erroneously denied by a trial court, and the defendant has exhausted his peremptory challenges. *Holliday*, 2020 WL 500475, at *15. To prove there has been reversible error warranting

---

[6] The trial court informed defense counsel he could "move at the end" instead of asking counsel for the basis or reason for his objection for cause. Although defendant may not have preserved the issue for appeal by failing to state a challenge for cause or basis as to Ms. Brooks at the conclusion of the second panel, we will address the issue as defense counsel had exhausted all peremptory challenges prior to Ms. Brooks being called. *State v. Queen*, 17-599 (La. App. 3 Cir. 1/4/18), 237 So.3d 547, *writ denied*, 18-211 (La. 11/20/18), 257 So.3d 186.

reversal of the conviction, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. *Id*. (citing *State v. Cross*, 93-1189 (La. 6/30/95), 658 So.2d 683, 686).

A trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire *voir dire* reveals the judge abused his discretion. *Holliday*, *supra*; *State v. Robertson*, 92-2660 (La. 1/14/94), 630 So.2d. 1278. The trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning by the parties' attorneys which are not readily apparent at the appellate level where a review is based on a cold record. *State v. Savage*, 16-511 (La. App. 5 Cir. 4/12/17), 218 So.3d 714, 719, *writ denied*, 17-1083 (La. 6/1/18), 243 So.3d 1063 (citing *State v. Munson*, 12-327 (La. App. 5 Cir. 4/10/13), 115 So.3d 6, 12, *writ denied*, 13-1083 (La. 11/22/13), 126 So.3d 476). A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge's refusal to excuse her on the ground that she is not impartial is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. *State v. Kang*, 02-2812 (La. 10/21/03), 859 So.2d 649, 653; *State v. Lee*, 559 So.2d 1310, 1318 (La. 1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).

A prospective juror's relationship to a person who was the victim of a crime does not disqualify a prospective juror from serving. *State v. Dotson*, 16-0473 (La. 10/18/17), 234 So.3d 34, 41-42 (citing *State v. Dorsey*, 10-216 (La. 9/7/11), 74 So.3d 603, 631 *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012)). This is true even when the crime is similar to the one of which the defendant stands charged. *State v. Thom*, 92-911 (La. App. 5 Cir. 2/25/93), 615 So.2d 355). The pertinent inquiry is whether the prospective juror can put aside the

experiences of relatives and be fair and impartial to the State and the defendant. *Magee*, 150 So.3d at 454. A prospective juror's past experience as, or relationship to, a victim of a crime similar to that for which the defendant is being tried must be examined in conjunction with other evidence in the record of the *voir dire* proceeding that bears on the prospective juror's ability to be fair and impartial and to apply the law as instructed by the trial court. *Dotson*, 234 So.3d at 42. In the *Dotson* case, the Louisiana Supreme Court upheld the denial of a challenge for cause of a prospective juror in a rape trial, despite the juror revealing that her mother was raped and murdered. The Louisiana Supreme Court determined that the trial court did not abuse its discretion in refusing to find the prospective juror's relationship with a victim of a similar crime automatically rendered her unable to be impartial on a jury. *Id.* The court noted it was constrained by the record, wherein the prospective juror at no point stated that she could not be impartial in the case. *Dotson*, 234 So.3d at 42-43.

This Court has also upheld the denial of challenges for cause of prospective jurors whose relatives have been crime victims when the jurors stated that they would be fair and impartial in rendering a verdict. In *State v. Magee*, we found a prospective juror was sufficiently rehabilitated to defeat a challenge for cause when he agreed that he could apply and follow the law as given by the court and that he could be a fair and impartial juror in a trial for second degree murder and two counts of assault by drive-by shooting, despite the juror revealing his brother-in-law had been murdered in a drive-by shooting. 13-1018 (La. App. 5 Cir. 9/24/14), 150 So.3d 446, 454, *writ denied*, 14-2209 (La. 10/2/15), 178 So.3d 581.

In the instant case, although Ms. Brooks initially stated that she was "not very partial to guns," and when asked by the trial court whether her family's history would impact her in this case, Ms. Brooks responded equivocally "it may." Ms. Brooks was sufficiently rehabilitated during additional questioning by the trial

court, the State, and the defense.  Upon the State's direct questioning as to whether she could listen to the facts of defendant's case and give defendant a fair trial, Ms. Brooks unequivocally stated "Yes." When questioned by the trial court, Ms. Brooks confirmed that her past would not influence her in defendant's case. In response to defendant's questioning, Ms. Brooks stated she would not "hold a prejudice."  Defendant did not further challenge Ms. Brooks with a basis, nor did he request the trial court's reasoning or rationale for denial of his challenge. Giving the trial court the broad discretion which it is due, based on the totality of Ms. Brooks's testimony, we find the trial court did not err in allowing Ms. Brooks to serve as a juror.

**PRO SE THIRD ASSIGNMENT OF ERROR**

Defendant asserts that Deanne R. Boyd, who was introduced as the State's co-counsel during *voir dire*, was his public defender during pretrial matters. Defendant argues that Ms. Boyd's presence created a conflict of interest and was "both unethical and prejudicial" to defendant.  Defendant argues that recusal of Ms. Boyd was required under the provisions of La. C.Cr.P. art. 680, "The Code of Professional Responsibility," and the Fourteenth Amendment Due Process Clause.

The record shows that Deanne Williams was appointed as counsel for defendant on April 23, 2018.  She represented defendant at arraignment and at five status conferences before representation was reassigned to David Moyer on September 18, 2018.  There is no evidence in the record that Deanne Williams was later employed by the St. Charles Parish District Attorney's Office.

La. C.Cr.P. art. 680 requires recusal of a district attorney who has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.   A defendant attempting to recuse a district attorney on the basis of a personal interest in the cause which is in conflict with

fair and impartial administration of justice has the burden of timely filing a motion to recuse and proving this ground for recusal by a preponderance of the evidence. *State v. King*, 06-2383 (La. 4/27/07), 956 So.2d 562, 565; *State v. Gatewood*, 12-281 (La. App. 5 Cir. 10/30/12), 103 So.3d 627, 636. The Louisiana Supreme Court has noted that strict construction of the statutory language of La. C.Cr.P. art. 681 would allow a district attorney to prosecute a case when he should have recused himself, if the defense fails to timely file the motion to recuse. *State v. Woods*, 283 So.2d 753 (La. 1973).[7]

In the instant case, defendant did not file a pretrial motion for recusation of Ms. Boyd, even though defense counsel should have been aware of any conflict since he took over representation from Ms. Williams. Moreover, the record contains no evidence to show that Ms. Boyd and Ms. Williams are the same person. Defendant relies solely on conclusory allegations and arguments that cannot be corroborated by the record. Therefore, on the showing made, we do not find any merit to this assignment of error.

**ERRORS PATENT**

In his *pro se* brief, defendant requests an error patent review.[8] During our review of the record, we note that the minute entry does not reflect the sentence is at hard labor or with the Department of Corrections. According to the sentencing transcript, the trial court ordered the sentence to be served at hard labor. The sentencing minute entry does not designate either of defendant's convictions as a crime of violence. Among the crimes that "shall always be designated by the court

---

[7] La. C.Cr.P. art. 681 states "A district attorney *may* recuse himself, whether a motion for his recusation has been filed or not, in any case in which a ground for recusation exists. A motion to recuse the district attorney shall be in writing and shall set forth the grounds therefor. The motion shall be filed in accordance with Article 521, and shall be tried in a contradictory hearing. If a ground for recusation is established the judge shall recuse the district attorney." (*emphasis added*).

[8] This Court routinely reviews the record for errors patent in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

in the minutes as crimes of violence are: "(3) second degree murder." *See* La. C.Cr.P. art. 890.3(C). Therefore, defendant's convictions must be designated as crimes of violence in the trial court minutes. *See State v. Thompson*, 18-273 (La. App. 5 Cir. 11/28/18), 259 So.3d 1257.

Examination of the record also reveals inconsistencies between the uniform sentencing commitment order (UCO) and the sentencing transcript. The sentencing transcript shows the trial court stated that each sentence was to be served without benefit of probation, parole, or suspension of sentence. However, the UCO does not reflect that the sentence as to count one and the sentence to count two are to be served without benefit of probation, parole, or suspension of sentence. The UCO also does not reflect that defendant's sentences are to be served at hard labor. *See State v. Smith*, 18-131 (La. App. 5 Cir. 10/17/18), 258 So.3d 973, 982, *writ denied*, 18-1959 (La. 4/15/19), 267 So.3d 1123.

Therefore, we remand the case for correction of the minute entry and UCO as noted to ensure accuracy of the record. Further, it is also directed that the 29th Judicial District Court Clerk of Court transmit the corrected UCO to the appropriate authorities, in accordance with La. C.Cr.P. art. 892(B)(2), and the Department of Corrections' legal department.

**CONCLUSION**

After our review of the record, we find no merit to the assignments of error and affirm the convictions and sentences of the defendant, Ed Raymond Veillon, Jr. We remand the case to the trial court for correction of the minute entry and uniform commitment order (UCO) to reflect that the sentences are to be served at hard labor, without the benefit of probation, parole, or suspension of sentence. We

further direct the 29th Judicial District Clerk of Court to transmit the corrected

UCO to the appropriate authorities.

**<u>CONVICTIONS AND</u>**
**<u>SENTENCES AFFIRMED,</u>**
**<u>REMANDED FOR</u>**
**<u>CORRECTIONS OF RECORD</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 29, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**19-KA-606**

**E-NOTIFIED**

29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE EMILE R. ST. PIERRE (DISTRICT JUDGE)
LOUIS G. AUTHEMENT (APPELLEE)

**MAILED**

ED RAYMOND VEILLON, JR. #743618
(APPELLANT)
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712

HON. JOEL T. CHAISSON, II (APPELLEE)
DISTRICT ATTORNEY
TWENTY-NINTH JUDICIAL DISTRICT
COURT
POST OFFICE BOX 680
HAHNVILLE, LA 70057